## Close Estate

*Butz, Steckel, Hudders & Rupp*, for accountant.
*Snyder, Wert & Wilcox*, for claimant.

GEARHART, P. J., December 10, 1947.—This is the audit of the first and final account of Richard Close, administrator of the estate of James Close, deceased.

Decedent died December 26, 1943, and letters of administration were granted to this accountant the following spring, namely, March 28, 1944. Decedent was survived by a widow, Agnes Close, a weak-minded person, for whom the Liberty Bank and Trust Company is guardian. There are no children or issue of any deceased children surviving.

The balance for distribution, after payment of administration expenses and giving effect to the widow's exemption, is $365.03. The total amount with which the accountant charges himself is $1,270.97. The estate is insolvent if the two undertakers involved in burying decedent are to be paid in full. Two undertakers were necessary since decedent died in Columbus, Ohio, and his body was shipped to Allentown, Pa.

The Egan-Ryan Undertaking Company of Columbus, Ohio, presented their bill at the audit in the amount of $269.80, and at the same time, the bill of William M. Turnbach, the Hazleton undertaker, was presented in the amount of $594.50. His bill was paid in full by the Liberty Bank and Trust Company, guardian of the wife of this decedent, with the approval of the court of common pleas of this county. And on September 8, 1947, the court of common pleas entered the following order:

"And now, September 8, 1947, the petition of Liberty Bank and Trust Company for instructions as to whether or not it is to claim of the administrator of the estate of James Close the $500 widow's exemption, and whether or not it is to claim reimbursement from the administrator for a funeral bill heretofore paid, having come on for hearing, the said Liberty Bank and Trust Company, Guardian aforesaid, is hereby ordered to claim the said widow's exemption and to make claim for the sum of $594.50 paid to William M. Turnbach, one of the undertakers of the late James Close."

The guardian has dutifully made claim to the widow's exemption of $500, which is allowed, and also for reimbursement in the sum of $594.50 paid to William M. Turnbach, the Hazleton undertaker.

Counsel for the accountant has suggested that the $594.50 claim be proportionately paid with the Egan-Ryan claim of $269.80 out of the fund of $365.03 remaining in the estate. If this theory of payment were followed, the net effect would be to give to the Hazleton

undertaker more than two-thirds of the fund, and the remaining part to the Egan-Ryan Undertaking Company of Columbus, Ohio.

The Egan-Ryan Undertaking Company deems this method of payment to be most unjust and so do we. The Columbus undertaker, for his charge of $269.80, did the following: He furnished a complete funeral and casket for $200; shipping box at $11.50; a suit at $18; underwear and hose at $1.50; railroad fare to Allentown, $35.80; and a telegram, $3—so that in the normal course of events, all that the second undertaker had to do was to conduct the funeral rites and bury the decedent. It seems, however, that when the body arrived in Allentown, a brother or brothers of the decedent were not satisfied with the type of casket and clothing, etc., and accordingly engaged Mr. Turnbach, who gave this decedent an elaborate burial, as is indicated by his bill of $594.50. This was done at a time when it was not known whether or not this estate was solvent; indeed, when the guardian of decedent's widow was authorized to pay the Turnbach bill, so far as was known, there were no assets in this estate. The assets turned up subsequently, and accordingly, this belated account was filed.

One would expect that the Egan-Ryan bill would be paid first, but strangely enough, this was not done. The services rendered were necessary, entailing as they did, a cash outlay not only for the casket, but for clothing, as well as advancements for shipping charges and telephone negotiations. The bill is reasonable in all its aspects and was in keeping with decedent's station in life. However, when the Turnbach bill met with some opposition from counsel for the Commonwealth with respect to the allowance of these funeral bills, the smaller bill was withdrawn on the promise, (so we are informed), of this accountant to personally pay the Egan-Ryan bill. It was then, apparently, that the auditor approved the larger Turnbach bill.

We have no hesitancy in stating, in view of the decisional law of this State with respect to funeral bills, that if the Turnbach bill represented the only amount claimed for funeral services, we would regard the same as excessive under the circumstances. The question before us is what amount should be allowed for funeral expenses.

The amount for which an undertaker may hold the estate responsible of course depends on all the circumstances in the case: The situation in life of decedent, the size of the estate, etc. Whether the amount expended was reasonable is in the first instance for the court, when the fund is before it for distribution. The rule was thus stated in Ennis' Estate, 76 Pa. Superior Ct. 292 at page 294, by President Judge Keller of the Superior Court:

"Where an undertaker contracts with the executor of a decedent's will, he may, ordinarily, hold such person liable for the amount of his bill, and the responsibility for the reasonableness of the charges is transferred to the legal representative who must satisfy the parties interested in the estate and the court in that respect; but where he proceeds at the direction of one without authority to contract for and bind the estate, the law implies a contract on behalf of an executor having assets sufficient for the purpose only to the extent of a funeral suitable to the station in life of the decedent as well as not disproportionate to the size of the estate; in other words, reasonable under all the circumstances: Cullen's Estate, 8 Pa. Superior Ct. 494; Sinnott's Est., 15 Dist. R. 873; Bauman's Estate, 5 Pa. C. C. 579; Taylor's Estate, 3 Dist. R. 691." See also Gobrecht's Estate, 47 D. & C. 134, 138.

In Ennis' Estate, the undertaker presented a claim for $937.80. Decedent's estate amounted to $22,000. The orphans' court found that the bill was excessive

and allowed the undertaker $600, which was approved by the Superior Court.

Nor does it follow that the fact that the things furnished were billed at a reasonable price, is sufficient to justify the claim of the undertaker claimant. The things furnished must not only be reasonable in price, but reasonably necessary, considering the station in life and the estate: D'Alessandro's Estate, 16 D. & C. 113 (1931).

In the latter case decedent left an estate of $5,926.87. The funeral bill was presented in the amount of $859. The court in that case held that under all the circumstances, an allowance of $350 for funeral expenses "would be fair and equitable".

In O'Hara's Estate, 118 Pa. Superior Ct. 558 (1935), decedent left an estate of about $10,000. The undertaker presented a bill of $3,440.85 for funeral expenses. The orphans' court reduced this amount to $508.35. This was approved by the Superior Court, in an opinion written by Judge Baldrige, wherein it was stated (p. 562):

"It has been the wise policy of the courts to approve only claims for funeral expenses that bear a fair and reasonable proportion to the amount of the estate of a deceased and his situation in life. When undertakers make sales of expensive caskets and pretentious burial accessories, they run the risk of having their claims disallowed."

In Merrick's Estate, 16 D. & C. 404, the undertaker bill was reduced from $1,008 to $300. Judge Gest, writing the opinion, opined that $300 was as much as should be allowed under the circumstances, adding: "the claimant must look to those who employed him for the rest of his bill".

Judge Holland of the Montgomery County Orphans' Court, in a number of cases has indicated that $300 is a fair and reasonable expenditure for funeral services in an insolvent estate: Cooley's Estate, 57 Montg. 270; Fahy's Estate, 57 Montg. 272.

In Mellon's Estate, 46 D. & C. 287, Judge Waite ruled that $350 was a fair and reasonable amount for funeral expenses in an estate where the total assets amounted to $1,779.82.

In Capinski's Estate, 53 D. & C. 357, under the peculiar circumstances of that case, $200 was held as a reasonable sum for funeral expenses.

Turning to the facts of this case, we find that the Egan-Ryan claim for services rendered in connection with the funeral in the amount of $269.80, was necessary, and represents a reasonable charge; that after these services had been rendered by Egan-Ryan and the body shipped to Allentown, it was the duty of the local undertaker to know, as he must have known, that the law will allow only a reasonable expenditure for funeral services. Despite this fact, he, at the behest of a brother or brothers of decedent, discarded the casket sent on from Ohio, changed the clothing of the dead man and proceeded to bury decedent in a lavish manner.

We have already stated that all that was necessary for the local undertaker to do was to conduct the final funeral rites and inter the body. For this service, a charge of $94.50 would have been reasonable and fair. In short, the $500 expended beyond the above sum by the local undertaker, we regard as entirely unjustified and excessive under all the circumstances. And for any amount expended in excess of this sum of $94.50, the undertaker should look to those with whom he contracted. Since the guardian has paid this sum of $594.50 to Mr. Turnbach, it is in the identical position with respect to this claim as Mr. Turnbach would be if he were present claiming at the audit. We have ruled that we would allow Mr. Turnbach only what we regard as a reasonable and just expenditure, namely, $94.50; consequently, that is all that will be allowed the guardian.

If the guardian is to be reimbursed for the difference between what it expended and what we allowed, then

the guardian must do what Mr. Turnbach would have been compelled to do, had he desired payment, namely, look to those with whom he contracted for the funeral.

It has been frequently said that the orphans' court applies equitable principles. Here and now is the place and time to apply them. It is so manifestly fair and just that Egan-Ryan be paid their claim of $269.80. This undertaker performed the necessary work, laid out the money, and his claim should have been paid first, indeed, should have been paid long ago.

One other matter remains: We observe that in the account, the accountant makes this statement: "Reserved for filing account, registered mail, etc., $20". The better practice is to take credit only for money actually expended. Since this has not been done, we now direct the accountant to pay to the Liberty Bank and Trust Company, guardian for decedent's widow, this $20 less any sums expended for the items mentioned in the account; he will supply the guardian with a statement showing what expenditures have been made.

### Order of court

And now, February 13, 1948, the exceptions having been withdrawn, the adjudication heretofore entered in this matter on December 10, 1947, is confirmed absolutely, and the administrator is directed to comply with the order. At the hearing it was further agreed that the Egan-Ryan Undertaking Company of Columbus, Ohio, would assign to this estate whatever interest or claim they obtained at an auditor's hearing in the Court of Common Pleas of Lehigh County, wherein the Estate of Agnes Close, a weak-minded person, was involved. Upon assignment of this claim to this estate, the administrator, Richard Close, is directed to assign the same to the Liberty Bank & Trust Company of Allentown, Pa., guardian of Agnes Close, a weak-minded person. This assignment represents part of her

distributive share, she being entitled to $5,000 allowance plus one half of the estate. In this case the estate amounts to considerably less than the $5,000 allowance.

This is a final decree.